UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CUTRALE CITRUS JUICES USA, INC.,

        Plaintiff,

-vs-                            Case No. 5:09-cv-177-Oc-10GRJ

LIBERTY MUTUAL INSURANCE
COMPANY,
        Defendant.

_____/

## MEMORANDUM OPINION
## DECIDING
## CROSS MOTIONS FOR SUMMARY JUDGMENT

This is an action for breach of contract (insurance policies) brought by the insured,

Cutrale, against its insurer, Liberty Mutual.[1]

The case is not the usual insurance dispute concerning the scope of coverages

afforded by the policies; but, rather, involves issues relating to the calculation of unearned

premiums due to be refunded because Cutrale cancelled the policies midway during the

coverage period.[2]

Jurisdiction is predicated upon diversity of citizenship, 28 U.S.C. § 1331, and is

uncontested.  Venue is proper in this district, and Florida law supplies the rule of decision.

---

[1]    The named Defendant is Liberty Mutual Insurance Company.  According to the Defendant, the two policies remaining at issue were actually issued by its affiliate, Liberty Mutual Fire Insurance Company, and "the appropriate corrections would need to be made before the entry of final judgment." (See Doc. 11, page 1, note 1).  The court interprets that statement as an acquiescence in the substitution of Liberty Mutual Fire Insurance Company as the Defendant in this action, and It Is So Ordered.  Rule 21, Federal Rules of Civil Procedure.

[2]    There is no dispute that Cutrale had the right to cancel the policies at the time and in the manner that it did so.

The parties have filed cross motions for summary judgment under Rule 56, Federal Rules of Civil Procedure (Docs 11 and 15), and both sides agree that there is no genuine issue of material fact precluding summary disposition.  The case may be decided as a matter of law on the basis of the pleadings and other papers on file.  In addition to full briefing,[3] the court has heard oral argument and the case is ready for decision.

## Discussion

Effective October 4, 2006, Cutrale purchased seven separate policies of insurance from Liberty Mutual for a term of one year running through October 4, 2007.  Because the cost of the policies represented an increase over the prior year, Cutrale explored the market, found alternative coverages at a lower cost, and cancelled all of the Liberty Mutual policies effective March 1, 2007 - - 148 days into the insured term or 40.5% of the annual policy period.  Liberty Mutual then calculated, and tendered to Cutrale, the unearned premiums that Liberty Mutual believed to be due.

Cutrale disagreed with the amounts of the refunds, and six of the polices were placed in dispute by Cutrale's complaint.  In the motion papers and briefs presently before the court, ony two of those six policies remain at issue.  (See Doc. 21, page 2, Plaintiff's Opposition to Defendants' Motion for Summary Judgment, and Doc. 26, Liberty Mutual's Reply Memorandum).

The two policies as to which Cutrale continues to press its claims are a Commercial General Liability Policy (the "026 Policy") and an Umbrella General Liability Policy (the "076 Policy").  With respect to those two policies, the following chart shows the pertinent figures and the differences between the parties, in dollars:

---

[3]     The court commends counsel for both parties for the quality of their briefs, explaining a complicated process in plain and cogent terms with a proper professional respect for the parties and for each other.

**026 Policy**

|  | Liberty Mutual | Cutrale |
|---|---|---|
| Annual Premium | 712,565 | 565,917 |
| Premium Paid | 361,312 | 361,312 |
| Earned Premium | 331,343 | 263,151 |
| Refund Due | 29,969 | 98,161 |

**076 Policy**

|  | Liberty Mutual | Cutrale |
|---|---|---|
| Annual Premium | 351,260 | 385,125 |
| Premium Paid | 351,260 | 351,260 |
| Earned Premium | 351,260 | 179,083 |
| Refund Due | - 0 - | 172,177 |

A.    The "026 Policy"

The 026 policy was a rated or audited policy under which the annual premium was to be determined by a formula which included, as a primary component, Cutrale's gross sales during the policy period.[4]   In the event of midterm cancellation by the insured, Florida administrative regulations provide that the unearned premium should be determined by a "wheel algorithm" methodology which includes a "short rate" adjustment whereby the insured receives 90% of the amount that would constitute a full pro rata return.[5]   There is no dispute

---

[4]    It is undisputed that the premium for the 026 policy was to be $3.226 for each $1,000.00 of Cutrale's sales.

[5]    The short rate reduction is designed to permit the carrier to recoup administrative costs incident to issuance of the policy - - costs that are included in the premium (apart from compensation for the risk) spread out over the life of the coverage.

between the parties concerning the applicability of these methodologies to the case; the disagreement lies in the <u>manner</u> in which the methodology for calculating the earned premium should be applied in the absence of any provision in the policy specifying the way in which that should be done..

Liberty Mutual determined the refund due under the 026 policy this way. The policy was in force for 148 days or 40.5% of its full term. Cutrale's sales during that 148 day period totaled $89,457,223.00.[6] The premium rate for the policy was $3.226 per each $1,000 of Cutrale's sales. According to Liberty Mutual, the premium for the time the policy was in force was, therefore, the sum of $288,589.00 (3.226 x 89,457 = 288,589). Then, in order to apply the short rate adjustment, Liberty Mutual had to first determine the annual premium the policy would have earned. It did this by dividing the partial premium of $288,589.00 by the percentage of the policy term that coverage was in effect - - 40.5% - - producing the sum of $712,565.00, as the projected annual premium. It then applied the short rate reduction of 46.5% (i.e., the reduction of the pro rata refund)[7] producing $331,343 as the earned premium or the amount of the annual premium that Liberty Mutual was entitled to retain. Cutrale had paid $361,312.00 and was thus entitled, per Liberty Mutual, to a refund of $29,969.00.

It is readily apparent from this calculation that inherent in the methodology is an extrapolation of Cutrale's annual sales on the basis of the actual sales during the 148 days

---

[6]     There is no dispute concerning this number.  Similarly, there is no dispute that Cutrale's actual sales for the full one year term of the policy as issued was the sum of $175,423,684.00

[7]     The short rate adjustment was calculated as follows.  The policy was in effect for 148 of 365 days or 40.5% of the policy period.  It was <u>not</u> in effect for 59.5% of the policy period. A pro rata refund to the insured would therefore equal 59.5% of the annual premium.  Ninety percent of 59.5% is 53.5% (the short rate reduction) so that Liberty Mutual would retain 46.5% of the annual premium and the insured is entitled to a refund of any amount paid in excess of 46.5% of the annual premium.

that the policy was in force.  This was the net effect of projecting an annual premium of $712,565.00 from the partial premium of $288,589.00 which was calculated on the basis of actual sales during the limited 148 day period.  Though the figure is never mentioned by Liberty Mutual, in order to earn an annual premium of $712,565.00, Cutrale's gross sales during the one year term would have to be $220,881,000.00 (200,881 x 3.226 = 712,565).

In fact, however, due to the seasonal nature of its business in the citrus industry, Cutrale's actual sales during the one year policy term amounted to $175,423,684.00; and, using that figure as urged by Cutrale, the total annual premium on the policy would be $565,917.00 (3.226 x 175,424 = 565,917).  Then, applying the short rate calculation (46.5% of the annual premium) yields an earned premium of $263,151.00.  Cutrale had paid $361,312.00, so the unearned premium to be refunded, according to Cutrale, should be $98,161.00 (361,312 - 263,151 = 98,161); and, giving credit to Liberty Mutual for the $29,696.00 previously paid, Cutrale claims that it is still owed a refund of $68,192.00 on the 026 policy.

It is an interesting phenomenon that the parties in their multiple briefs concerning the 026 policy do not cite a single decisional authority from the state or federal courts addressing this conundrum.  Instead, both sides argue the "logic" of their respective approaches to the problem.

Liberty Mutual says that calculating the earned premium on the basis of the total sales made during the time the policy was in force is the most appropriate means of measuring the risk and determining its compensation - - the premium - - in the manner prescribed by the policy.  That makes some sense, but the argument is less convincing when that number is then used to project the annual premium (and fictional annual sales) in making the short rate calculation to determine the adjusted earned premium that Liberty Mutual is entitled to retain.

5

Cutrale says that the problem is a simple one. The policy - - the contract - - contemplated calculation of the total premium on the basis of gross sales during the total one year term of the coverage. That is the nature of an audited policy.[8] The premium cannot be determined until the term has expired, and the policy contains no provision altering that approach in the event of midterm cancellation. There is no need - - and no justification - - for projections or extrapolations. Cutrale's actual gross sales during the contemplated term of the policy are known and not disputed - - $175,423,684.00. The total annual premium using that number would be $565,917.00; and, as previously discussed, after applying the short rate calculation, the unearned premium to be refunded is $98,161.00, or a net of $68,192.00 after giving Liberty Mutual credit for the $29,969.00 it previously paid.

Upon due consideration, the court has concluded that Cutrale has the better part of this argument. The contract is ambiguous in its silence. Points can be made in support of either approach, but the methodology urged by Cutrale seems more in keeping with the nature of the agreement - - an audited policy - - and is based upon actual, not projected or extrapolated figures. That result is also in keeping with general principles of applicable law. In the event of ambiguity or uncertainty in the construction or application of a contract of insurance, Florida law dictates that the doubt be resolved in favor of the insured. E.g., Fireman's Fund Ins. Co. v. Boyd, 45 So.2d 499 (Fla. 1950); Financial Fire and Casualty Company v. Callaham, 199 So.2d 529 (Fla. App. 2d Dist. 1967); Overton v. Progressive Insurance Company, 585 So.2d 445 (Fla. App. 4th Dist. 1991).

---

[8]     The policy (Doc. 14-1) states on its face "Audit Basis: 1 - At Expiration."

With respect to the 026 policy, summary final judgment will be granted in favor of the Plaintiff.[9]

B.    The "076 Policy"

The 076 policy provided umbrella excess liability coverages.  Item 5 of the form declarations page (Exhibit F to Liberty Mutual's Motion for Summary Judgment, Doc. 11-6) described the calculation of the premium.  That part of the form is reproduced below as it appears in the original:

| Item 5. PREMIUM Premium Basis | Code No. | Estimated Annual Exposure | Rate | Estimated Annual Premium (324) |
|---|---|---|---|---|
| per $1000 Gross Sales | 99935 | 160,000,000 | 2.1954 | 351,264 |
| Minimum Premium $   351,264 | | | Terrorism Risk Insurance Act | $ 0 |
| | | | Premium | $ 351,264 |

The premium for this policy is payable $_____ in advance, $_____ on first anniversary and $_____ on the second anniversary.

Audit Basis:   1 - At Expiration

Liberty Mutual points to the line reading "Minimum Premium $351,264" and contends, quite simply, that the earned premium at the inception of the policy - - the minimum premium - - is $351,264.  Cutrale paid $351,260 in advance and, therefore, according to Liberty Mutual, Cutrale is not entitled to any refund on the 076 policy.  Instead, Cutrale still owes $4.00 to Liberty Mutual.

---

[9]    The court is aware that the Defendant has filed a global motion for summary judgment (Doc. 11) whereas the Plaintiff's motion (Doc. 15) is for partial summary judgment addressing the 076 policy alone.  Nevertheless, the issues remaining are purely legal, the evidentiary record is complete, and summary disposition is in order with respect to the case as a whole.  See Artistic Entertainment, Inc. v. City of Warner Robins, 331 F.3d 1196, 1201-02 (11th Cir. 2003).

Florida law, specifically Florida Statute 627.413(5)(2010). provides that any "minimum premium policy " - - and Liberty Mutual contends that the 076 policy is a minimum premium policy under which the stated minimum premium is fully earned at the inception of coverage - - "shall have typed, printed, stamped, or legibly handwritten on the certificate the words 'minimum premium policy' or equivalent language." The Florida Administrative Code, Chapter 69 0-170.010(3) also imposes restrictions on the issuance of fully earned premium provisions in insurance contracts:

> (3) The inclusion of fully earned premium provisions in insurance contracts or endorsements is prohibited by this rule unless the insurer requesting the use of those provisions has justified them to the Office prior to their use.
>
> (a) Fully earned premium provisions can only be included in insurance policies or endorsements that provide specialized, relatively short term coverage on specific events or items of property that have a known time period of usefulness or exposure to loss.
>
> (b) Examples of exposures for which fully earned premiums are acceptable include, but are not limited to, crop hail insurance, flood insurance, outdoor concerts, picnics, sporting events, seasonal activities, minimum premium policies, and policies as to which fully-earned premiums are provided by Section 627.7275. F.S.

The parties expend considerable energy in debating whether the 076 policy complies with these provisions and whether the form of the policy was approved by the State administrative authorities as a minimum premium (or fully earned premium) policy. The Court, however, finds it unnecessary to resolve those issues because even if the policy was sufficiently labeled under the statute, and even if the form was approved for use in connection

8

with the issuance of fully earned premium policies, its provisions concerning the premium <u>in this</u> <u>instance</u> - - the 076 policy - - are still ambiguous.

To be sure, there is a line in Item 5 reading "Minimum Premium $351,264," but Cutrale points to the blocks on the preceding line of the declarations page stating: "Estimated <u>Annual</u> Exposure [and below that] 160,000,000." Then: "Estimated <u>Annual</u> Premium [and below that] 351,264." Then, on the concluding line: "Audit Basis: 1 - At Expiration." [emphasis supplied]. Focusing on these provisions while looking at the policy as a whole, Cutrale argues that the proper construction of the contract is that Cutrale was obligated to pay a minimum <u>annual</u> premium of $351,264 if the policy remained in force full term (and Cutrale was subject to an enhanced premium if its annual sales exceeded $160,000,000). Since the policy was cancelled midterm, and since Cutrale's annual sales did in fact exceed $160,000,000, Cutrale contends that the premium should be audited, and the discounted return should be determined using the same methodology applied to the 026 policy.

Here again the court believes that Cutrale has the better of the argument. The contract is ambiguous and Cutrale's interpretation of the meaning and intent of the agreement is the more reasonable construction to be made of an audited policy. It is also in keeping with governing law requiring that such ambiguities be resolved in favor of the insured. See authorities cited <u>supra</u>.

The proper method of calculating the unearned premium under the 076 policy is as follows. Cutrale's annual sales of $175,423.684 x 2.1954 (the contract rate) = $385,125.00 (the annual premium). Determine the short rate reduction: $385,125 x .465 = $179,083.00 (the earned premium). Cutrale paid $351,260.00 in advance, so the unearned premium to be returned with respect to the 076 policy is $351,260 - $179,083 = $172,177.00.

With respect to the 076 policy, summary final judgment will be granted in favor of the Plaintiff.

### Conclusion

The Plaintiff's Motion for Partial Summary Judgment (Doc. 15) is GRANTED. The Defendant's Motion for Summary Judgment (Doc. 11) is, in all respects, DENIED.

The Clerk is directed to enter final judgment in favor of the Plaintiff Cutrale Citrus Juices USA, Inc. and against the Defendant Liberty Mutual Fire Insurance Company in the aggregate principal amount of $240,369 ($68,192 as to the 026 policy and $172,177 as to the 076 policy) plus interest at the rate provided by law from March 1, 2007 to the date of judgment with costs to be assessed according to law. In all other respects the Plaintiff's prayer for relief in its complaint (Doc 1) is DENIED with prejudice.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida, this 24th day of September, 2010.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy